UNITED STATES of America,
Plaintiff-Appellee,

v.

Philip J. GOLDBERG,
Defendant-Appellant.

No. 77–2989.

United States Court of Appeals,
Ninth Circuit.

Sept. 21, 1978.

Rehearing and Rehearing En Banc
Denied Nov. 9, 1978.

Donald C. Smaltz, Los Angeles, Cal., for defendant-appellant.

Marshall Tamor Golding, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before WRIGHT and CHOY, Circuit Judges, and POOLE,* District Judge.

CHOY, Circuit Judge:

Goldberg appeals from the district court's determination on remand from the United States Supreme Court that certain writings were not producible in his criminal trial under either the Jencks Act, 18 U.S.C. § 3500, or the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

(1963). We affirm in part and reverse in part.

## I. *Facts and Prior Proceedings*

Appellant was convicted on fourteen counts of violating 18 U.S.C. § 1341, each charging him with a separate transactional instance of use of the mail for the purpose of executing a fraudulent scheme of issuing single-premium annuity life insurance policies, falsely purporting to be premium fully prepaid, for use by the annuitant as collateral for loans.

The Government's case against Goldberg consisted primarily of the testimony of Newman, a fellow employee. Prior to the trial, the Government delivered to appellant a copy of Newman's testimony before the grand jury and a memorandum of an interview of Newman conducted by two Government lawyers, Keilp and Lebowitz. The transcript of that interview indicated that the lawyers intended to conduct further interviews. At trial during his cross-examination, Newman disclosed that he had in fact subsequently met with them, although unlike the first interview, no reporter was present at those subsequent meetings.

At this point during Newman's cross-examination, appellant moved for production of the attorneys' notes of those meetings pursuant to § 3500(b) of the Jencks Act.[1]

---

* The Honorable Cecil F. Poole, United States District Judge for the Northern District of California, sitting by designation.

1. The Jencks Act, 18 U.S.C. § 3500, provides in full:

    (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

    (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the

witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

    (c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of

The district court denied the request after receiving appellant's memorandum in support of the motion on the ground that the notes were the "work product" of the two lawyers. Appellant's request that the Government be ordered to deliver the notes for *in camera* inspection by the court was also denied.

In an unpublished memorandum opinion on December 18, 1974, this court affirmed the denial of appellant's Jencks Act motions not on the ground that the notes were attorney's work product, but rather because the notes were not "statements" within the meaning of the Jencks Act. The Supreme Court granted certiorari, 422 U.S. 1006, 95 S.Ct. 2627, 45 L.Ed.2d 669 (1975).

In *Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976), the Supreme Court reversed, holding that there is no "work product" exception to the statutory definition of a "statement" in the Jencks Act, and that the factual determination of whether attorneys' notes constitute "statements" within the statutory definition must initially be made by the trial court, not by the Court of Appeals. The case was remanded to the district court for a determination of whether the disputed notes were properly producible under the Jencks Act. The Supreme Court also indicated in footnote that if it were determined that production of the materials was not required under the Jencks Act, the district court should decide whether the notes were

nonetheless producible under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See* 425 U.S. at 109 n.15, 96 S.Ct. 1338.

On remand, 435 F.Supp. 1172 (D.Ariz. 1977), the district court found that the notes were not producible under the Jencks Act or under *Brady.* The court entered a new final judgment identical to the original, including conviction on Count 10, which had been reversed in Goldberg's first appeal.

## II. *Jencks Act*

At trial, after appellant moved for production of the Government attorneys' notes of the Newman interviews, the district court required the Government to collect all its notes in preparation for a possible production order. These notes, which totalled 237 pages, were lodged with this court during the pendency of Goldberg's first appeal and later with the Justice Department pursuant to argument in the Supreme Court. In the course of preparing his brief, the Solicitor General discovered that 40 of the 237 pages were not the attorneys' notes, but handwritten notes by Newman himself. All 237 pages of material were then delivered to appellant's counsel for the purpose of prosecuting his appeals.

The Supreme Court's opinion, 425 U.S. at 110 & n.18, 96 S.Ct. 1338, held that the following factual determinations concerning the 40 pages of Newman notes were to be made by the district court on remand:

the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement or such portion thereof as the court may direct, the court shall strike from the record the testimony of

the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

(1) Whether the Newman notes were in existence at the time of appellant's Jencks motion during Newman's cross-examination.
(2) Whether, if the notes did not then exist, they were in existence when Newman testified on rebuttal and there was a proper Jencks request at that time.
(3) If in existence at the time of a proper Jencks motion, whether these notes deal largely, or entirely, with matter other than Newman's direct testimony. ·

With respect to the remaining 197 pages of attorneys' notes, the Court held that the district court should address the following issues of fact on remand:

(1) Whether these notes were read back to the witness Newman, or Newman read them himself, and he then adopted or approved them.
(2) Whether these notes were in existence at the time of appellant's Jencks motion during Newman's cross-examination.
(3) Whether, if the notes did not then exist, they were in existence when Newman testified on rebuttal and there was a proper Jencks request at that time.

*Id.* at 110–11 & nn.18, 20, 96 S.Ct. 1338.

In addition to iterating these "most significant" issues, the Court left open for the district court's consideration any further factual issues necessary to a determination of the Jencks question, noting: "We of course intimate no view whether production of any of the 237 pages of material was required in this case. That determination is to be made by the District Court." *Id.* at 111, 96 S.Ct. at 1348; *see id.* at 111 n.20, 96 S.Ct. 1338.

On review, the Supreme Court in its *Goldberg* opinion has made it clear that we may overturn the district court's findings only if they are clearly erroneous. In holding that this court erred by undertaking to make the initial determination whether the disputed notes constitute producible "statements," the Supreme Court relied on *Camp-*

*bell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963) (*Campbell II*), which held that whether notes of an interview can fairly be said to be a witness's own "statement" is a fact question, the determination of which may not be disturbed unless clearly erroneous.

On remand, the district court separately analyzed the 40 pages of Newman's own notes, the notes taken by Assistant U.S. Attorney Keilp, and the notes made by Assistant U.S. Attorney Lebowitz.

A. *Newman notes:* The district court found that one portion of these notes, consisting of two pages, was made solely for Newman's use and was never in the Government's possession until after trial, nor was the Government aware of the existence of these notes during the trial.

The remainder of the Newman notes, the court determined, were not in existence at the time of appellant's Jencks motion during Newman's cross-examination, and a proper Jencks motion was never made for their production thereafter.

■ The district court's finding that the Government was neither in possession of, nor aware of the existence of, a portion of the Newman notes was within the Supreme Court's conferment of authority upon it to consider factual issues in addition to those specifically enumerated in the Court's *Goldberg* decision. Appellant does not challenge this finding of fact, and we cannot say that it is clearly erroneous. Accordingly, the Government was not required to produce these pages of the Newman notes. The statute requires only production of statements by a witness "in the possession of" the Government. 18 U.S.C. § 3500(b).

The district court's findings with respect to the remainder of the Newman notes resolved factual issues specifically raised by the Supreme Court. Appellant neither points to any evidence nor offers any argument undercutting the finding on remand that this portion of the notes was not in existence at the time of his Jencks motion during Newman's cross-examination. Nor does the record support a contention that

the district court's finding on this point is clearly erroneous.

■ Similarly, the district court's finding that no proper Jencks motion was made for these materials when Newman testified on rebuttal or at any time thereafter is supported by the record. Appellant's only challenge to this finding is that there was a continuing order for production of all Jencks Act material. The district court, however, emphasized that the order in question required delivery of all Jencks Act statements *"by tomorrow,"* and found that it was not a continuing order. We cannot say that this finding is clearly erroneous.

Accepting the district court's findings of fact, the Government was not required to produce this portion of the Newman notes. The Supreme Court's *Goldberg* opinion, as well as the Jencks Act itself, makes clear that production is required under the statute only "on motion of the defendant." 18 U.S.C. § 3500(b); *see* 425 U.S. at 110–11 & n.18, 96 S.Ct. 1338. *See also id.* at 120 n.2, 123, 96 S.Ct. 1338 (Powell, J., concurring).

■ B. *Keilp notes:* The district court found that these notes were never read back to, or adopted by, Newman. The appellant does not contest this factual determination, and we conclude that it is not clearly erroneous.

The Supreme Court expressly specified this issue of fact as one for determination on remand. Moreover, its clear holding in *Goldberg*—as well as the Jencks Act itself—requires that "a writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness [have] been 'signed or otherwise adopted or approved' by the Government witness" in order to be producible. 425

U.S. at 98, 110 n.19, 96 S.Ct. at 1342; 18 U.S.C. § 3500(e)(1). This requirement is not met unless the lawyer reads back, or the witness himself reads, what the lawyer has written. 425 U.S. at 110–11 n.19, 96 S.Ct. 1338. Accepting the district court's finding of fact on this issue, the Keilp notes did not constitute Jencks Act "statements" and hence the Government was not required to produce them.

C. *Lebowitz notes:* The district court found that the notes made by attorney Lebowitz similarly were never read back to or seen by Newman until shortly before the remand hearing.[2] The procedure followed by Lebowitz, according to the court, was exactly that described by the Supreme Court in *Goldberg*, 425 U.S. at 110 n.19, 96 S.Ct. at 1348:

> Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what the witness has said do not constitute adoption or approval of the lawyer's notes within § 3500(e)(1), which is satisfied only when the witness has "signed or otherwise adopted or approved" what the lawyer has written.

The Supreme Court's opinion provided ample guidance to the district court on the standards to be applied in determining whether attorney Lebowitz's notes were producible under the Jencks Act. In addition, the concurring opinion of Justices Stevens and Stewart, by its own terms "not . . . inconsistent with anything in the Court's opinion,"[3] *id.* at 116, 96 S.Ct. at

2. The district court also found that the Lebowitz notes were "cryptic, episodic, and nowhere truly narrative in form," and thus not "substantially verbatim"—an allusion to the definition in subsection (e)(2) of the Jencks Act. However, as Justice Powell noted in his concurring opinion, joined by the Chief Justice, appellants do not rely on subsection (e)(2) in this case. *See* 425 U.S. at 125–26, 96 S.Ct. 1338. Nonetheless, as Justice Powell notes *id.* at 125, 96 S.Ct. 1338, the adoption or approval require-

ment of subsection (e)(1) and the "substantially verbatim" requirement of (e)(2) are identically aimed at insuring that the statements "can fairly be said to be the witness' own." *See Palermo v. United States*, 360 U.S. 343, 350, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959).

3. In addition, Justice Powell, with whom the Chief Justice joined, expressly concurred in Justice Stevens's conclusion that "a prosecutor's notes are producible only upon a 'finding of unambiguous and specific approval' of spe-

1351, was particularly thorough in its exposition of what is necessary for another's notes to comprise a "statement" by the witness:

> [M]ore than relevance to the testimony and approval by the witness is necessary to make a writing a Jencks Act statement. It must first of all be the kind of factual narrative by the witness that is usable for impeachment.
>
> If one of the prosecutor's notes is that kind of factual comment, it is still not a statutory statement unless that specific note has been adopted or approved by the witness. For if a witness could testify, without fear of contradiction, that the words used by the prosecutor were not his own, the document would not impeach his testimony and could not properly be offered for that purpose. General testimony that some of the notes taken by the prosecutor during a lengthy interrogation were read back to the witness, and that the witness sometimes assented to the prosecutor's version of what he said, would not justify a finding of approval of any particular note. Fairness to the witness demands a much stricter test of approval . . . .

425 U.S. at 114–15, 96 S.Ct. at 1350 (Stevens, J., concurring).

The appellant does not argue that the district court's findings of fact concerning the Lebowitz notes are clearly erroneous. In view of the Supreme Court's authoritative directions to the district court on the factual bases for a finding of adoption or approval, we agree with the district court's conclusion on remand. Accordingly, since the Lebowitz notes were not Jencks Act "statements," the Government was not required to produce them.

In summary, we find that the district court carefully applied the Supreme Court's instructions on remand, and its conclusion on the Jencks Act questions is affirmed.

### III. Brady *Material*

Consistently with the Supreme Court's suggestion in *Goldberg*, the district court—having determined that production of the disputed notes was not required under the Jencks Act—addressed appellant's *Brady* claim. The district court found that the Government's failure to disclose to appellant those notes in its possession "did not deprive [him] of a fair trial and its production as Brady material would not have helped him." 435 F.Supp. at 1176.[4]

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), holds that upon the request of a criminal defendant for specific evidence, the prosecution must comply—or at least submit the problem to the trial judge[5]—where the evidence is material to either guilt or punishment. Later, in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court distinguished the prosecutor's obligation to provide defense counsel with exculpatory information in cases like *Brady*, where a specific request for evidence is made, from cases in which only a general request is made. The Court concluded that in the former instance, the test of materiality is whether the requested evidence might affect the outcome of the trial. 427 U.S. at 104, 96 S.Ct. 2392. We interpret this test as synonymous with the harmless error standard. Since under the due process clause prosecutorial failure to respond to a specific request "is seldom, if ever, excusable," *id.* at 106, 96 S.Ct. 2392, such a nondisclosure is properly analyzed as error; and it therefore follows that the

---

cific notes." 425 U.S. at 125, 96 S.Ct. at 1355 (Powell, J., concurring).

**4.** The district court also found that even if the notes had been produced, "the verdict would have been the same," and that if nonproduction was error, it was "harmless beyond any doubt." 435 F.Supp. at 1176 n.2. Although the district court read the Supreme Court's opinion in *Goldberg*, 425 U.S. at 111 n.21, 96

S.Ct. 1338, as directing it to apply the harmless error standard to *Brady* error, that footnote only sets forth the standard for review of Jencks Act errors. Nonetheless, *Brady* errors are properly reviewable under the harmless error standard; *see infra.*

**5.** *See United States v. Agurs*, 427 U.S. 97, 106, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

reviewing judge should apply the harmless error standard, *see id.* at 111–12, 96 S.Ct. 2392; Fed.R.Crim.P. 52(a); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). As stated in *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), the *Chapman* standard of "harmless beyond a reasonable doubt" requires a new trial whenever there is a "reasonable possibility" that the error materially affected the verdict.[6] The practical similarity of "might have affected the outcome" and "reasonable possibility" of effect on the verdict further supports the conclusion that the harmless error standard applies to the *Brady*-type specific request category of cases.

In the general request situation, according to *Agurs*, the requested evidence must be of a kind that "creates a reasonable doubt that would not otherwise exist." 427 U.S. at 112, 96 S.Ct. at 2402. This test is stricter than the harmless error standard, *id.* at 111–12, 96 S.Ct. 2392, but is not so severe as to require the defendant who discovers the undisclosed evidence after trial to demonstrate that it "probably would have resulted in acquittal." *Id.* at 111, 96 S.Ct. at 2401. Since as noted above, the harmless error standard requires reversal where there is a "reasonable possibility" that the error materially affected the verdict, under the general request standard the likelihood that the undisclosed evidence would have resulted in acquittal must be more than a reasonable possibility, but need not be probable.

Appellant argues that this case, like *Brady*, is one in which a request for specific information was made. He refers to requests for "any written or recorded statements . . . made by the defendants or by any alleged conspirators not charged herein," for "any other statements made by the Government witnesses," and for any "inconsistent" statements by Government witnesses. In addition, at a pretrial hearing the district court ordered that "any documents in the government's possession or which it may acquire later . . . which may possibly fall under the *Brady* rule" be given to appellant's counsel.

It is doubtful that these requests for "any statements" and "any documents" describe "specific evidence" as was the case in *Brady* or as contemplated in *Agurs*. It is more likely that they gave the prosecutor scarcely better notice than if no request had been made. However, we are loath to attempt application of the *Agurs* general request standard where it is avoidable. It may well be within our competence to determine whether a particular error of nondisclosure that had a *reasonable possibility* of affecting the verdict, but did not *probably* affect it, yet might or might not have had some intermediate quantum of effect. Indeed, *Agurs* requires us to make such determinations. But application of such a precise standard[7] to so nebulous a concept as whether a reasonable jury would have entertained a reasonable doubt ought not to

---

**6.** *Cf. United States v. Valle-Valdez*, 554 F.2d 911, 915 (9th Cir. 1977) (*Chapman* and *Schneble* state "the most clearly articulated standard" of harmless error).

**7.** In contrast, there is a more readily applicable distinction between the harmless error "reasonable possibility" of effect on the *verdict* standard applicable to specific request cases, and the "reasonable likelihood" of effect on the *jury* standard of *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), applicable to the third *Agurs* category of cases in which perjured testimony is given at trial. *See United States v. Butler*, 567 F.2d 885, 889–90 (9th Cir. 1978).

Appellant attempts to bring his case under the *Giglio* standard by arguing that the prosecution told the jury that under its plea agree-

ment with Newman, he would plead guilty to a felony, when in fact the plea agreement was ultimately for two misdemeanors. However, at the time the prosecution's statements were made, they were true; not until after the jury retired was the decision made to recommend leniency. *Goldberg*, 435 F.Supp. at 1177. Moreover, appellant refers to nothing in the Newman, Keilp, or Lebowitz notes that relates to the truth or falsity of the prosecution's statements. In order for the notes to be analyzable under the *Giglio* standard, the notes themselves must demonstrate "that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." *Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397.

**490**

be undertaken unnecessarily. Accordingly, we will accept *arguendo* appellant's position that his requests were sufficiently specific to come within the *Brady* category of cases; for as will be seen, even under the harmless error standard applicable to specific request cases, nonproduction of the disputed notes did not deprive appellant of a fair trial.

■ First, however, we distinguish the Government's failure to produce that portion of the Newman notes that was not in its possession until after the trial. These notes were not susceptible to "suppression by the prosecution," *see Brady*, 373 U.S. at 87, 83 S.Ct. 1194. Under no circumstances is the Government required to volunteer to the defendant potentially exculpatory information which it neither possesses nor of which it is aware.

With respect to the remainder of the notes, appellant's only claim of materiality is that their use at trial would have enabled him further to impeach Newman by emphasizing the scope of his assistance to the Government in the hope of receiving lenient treatment. Goldberg does not dispute the district court's finding that the fact of Newman's cooperation was fully explored at trial; he simply argues that the specifics of that cooperation evidenced by the notes were not brought out. The district court found on remand, and we have seen no contrary evidence, that nothing in the notes tended to prove appellant's innocence of the charges against him.

In particular, appellant argues that certain portions of Newman's handwritten notes would have been useful for his impeachment. Appellant accurately summarizes these as providing questions for appellant's and a defense witness's cross-examination. Of course, there is no due process right to such materials on the basis that they would have given advance notice of the prosecution's questions—evidence of this character is not "material to guilt." The only legitimate purpose to which these notes could have been put is the further illustration of the extent of Newman's cooperation. Assuming the Government's failure to produce these notes was error, it

was harmless beyond a reasonable doubt. In addition to the obvious fact that they were merely cumulative on the issue of Newman's cooperation, it is questionable whether the effect of these notes—as well as the Keilp and Lebowitz notes—would be to impeach Newman at all. It is at least as likely that to the extent Newman could win the prosecutor's favor by his cooperation, he would be less likely to attempt to do so by perjurious testimony.

Finally, appellant points to three instances in the Newman notes where the notes were in factual conflict with Newman's testimony at trial. The text of the notes itself demonstrates that these inconsistencies were due to errors of recollection rather than lies. Moreover, there is no indication at all that one or the other version of the facts involved was in any way material to the issue of appellant's guilt.

■ In short, the usefulness of the Newman, Keilp, and Lebowitz notes to appellant related not to the substantive issue of his own guilt or innocence, but only to the impeachment of the witness Newman. Given the facts that they were cumulative and intrinsically of questionable value even for this purpose, we conclude that there is no reasonable possibility that their use at trial would have had a material effect on the verdict. If the Government's failure to produce those notes in its possession was error, that error was harmless beyond a reasonable doubt.

IV. *Government Misconduct*

■ Appellant argues that in failing to disclose the disputed notes, the prosecution acted in bad faith. The Supreme Court has clearly stated, however, that the good or bad faith of the prosecution is irrelevant to whether the nonproduction of evidence requires a new trial. As stated in *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, quoted in *Agurs* :

[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, *irrespective of the good faith*

*or bad faith of the prosecution.* The principle of *Mooney v. Holohan* is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.

427 U.S. at 110 n.17, 96 S.Ct. at 2400 (emphasis in original). The point was reiterated in *Agurs*:

Nor do we believe the constitutional obligation is measured by the moral culpability, or willfulness, of the prosecutor. . . . If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.

*Id.* at 110, 96 S.Ct. at 2400.

■ Additionally, appellant argues that in seven other instances the Government acted in bad faith. He urges that the totality of these requires that we reverse his conviction in the exercise of our supervisory powers over the administration of justice. *Cf. United States v. Banks,* 383 F.Supp. 389, 391–92 (D.S.D.1974) (dismissing charges against defendants), *appeal dismissed sub nom. United States v. Means,* 513 F.2d 1329 (8th Cir. 1975). This argument is outside the scope of the Supreme Court's remand order, which—while expressly permitting inquiry into Jencks Act issues not specifically dealt with in its *Goldberg* opinion, *see* 425 U.S. at 111 n.18, 96 S.Ct. 1338—was nonetheless restricted to the Jencks Act and, if necessary, *Brady* claims. *See id.* at 98 & n.3, 109 n.15, 96 S.Ct. 1338. Moreover, we previously decided three of these issues against appellant on his first appeal in this case. Three remaining issues were raised for the first time before the district court on remand and similarly decided against him; and the seventh issue is raised for the first time on this appeal. Assuming *arguendo* that these issues are properly before this court on this appeal, we find them insufficient to justify reversal, since appellant has shown no prejudice. *United States v. Abascal,* 564 F.2d 821, 831 (9th Cir. 1977).

### V. *Sufficiency of Evidence—Count 10*

■ In its *Goldberg* decision, the Supreme Court directed the district court to "enter a new final judgment of conviction" if the court concluded at the remand hearing that denial of appellant's request for production of the notes was not error. 425 U.S. at 111, 96 S.Ct. at 1348. Having so found, the district court did enter a new final judgment of conviction identical to the original, including conviction on Count 10, which this court reversed in Goldberg's first appeal for insufficiency of the evidence. Since the Supreme Court's *Goldberg* opinion in no way affects the validity of this court's previous opinion on this issue, we again reverse appellant's conviction on Count 10 for the reasons we stated therein.

AFFIRMED IN PART; REVERSED IN PART.