**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ralph Collins CAWLEY, Defendant-Appellant.**

**No. 79–1570.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1980.

Decided Sept. 8, 1980.

Rehearing Denied Nov. 14, 1980.

Marc D. Blackman, Ransom, Rogers & Blackman, Portland, Or., for defendant-appellant.

Kenneth C. Bauman, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before SKELTON, Judge,* and FARRIS and PREGERSON, Circuit Judges.

FARRIS, Circuit Judge:

Ralph Collins Cawley appeals his conviction for possession with intent to distribute heroin and cocaine in violation of 21 U.S.C. § 841(a)(1). His primary contentions are 1) that he was unconstitutionally subjected to double jeopardy, 2) that evidence obtained in a warrantless search of his van should have been suppressed because his consent to the search was not voluntary, 3) that hear-

say evidence concerning "tips" received by an agent of the Drug Enforcement Administration was improperly admitted, 4) that hearsay evidence concerning statements by his wife was improperly admitted, and 5) that he was denied due process because the government failed to disclose evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Between December 18 and December 22, 1978, a DEA agent received several tips from a confidential informant that a Mexican man was going to deliver up to a pound of heroin to Cawley, that Cawley was going to drive to Nevada in his van to pick up the heroin and that Cawley would be returning to Salem, Oregon, where he lived, with the drugs late on December 21 or early on December 22. At the request of the agent, local police detectives set up a continuous surveillance of Cawley's house beginning at 11:12 p. m. on December 21.

At 1:40 a. m. on December 22, Cawley and his co-defendant, Raymond Lopez-Diaz, arrived in Cawley's van and parked in front of Cawley's house. The detectives ordered Cawley and Lopez-Diaz out of the van, frisked and handcuffed them, read them their rights, and told them they were were being detained for the DEA. Upon questioning, Cawley stated that the van belonged to his wife, Kathy Campbell, but that he had permission to drive it. A detective asked Cawley whether he would consent to a search of the van. After Cawley said he would, the detective informed him that he did not have to consent and read the statement contained on a prepared "consent to search" card. Cawley asked what would happen if he refused to consent and the detective said he could not tell him what they would do. Cawley then verbally consented to the search, but refused to sign the consent card.

The detective searched the van and found heroin between two pillow cases, which had been placed, one inside the other, to form a

---

* Honorable Byron G. Skelton, Senior Judge, United States Court of Claims, sitting by designation.

bag containing toiletries and other personal items, later found to belong to Lopez-Diaz. When the DEA agents arrived, Cawley and Lopez-Diaz were formally arrested and taken to the local sheriff's office.

Lopez-Diaz, who was a federal escapee at the time, entered into a plea agreement in which he agreed to testify against Cawley in return for a dismissal of one count against him and a stipulated trial on the other count.

Cawley was tried twice. A mistrial was declared at the conclusion of the first trial, after the jury foreman advised the judge that the jury was unable to reach a unanimous verdict. In an unrecorded proceeding at which counsel were present, the judge apparently questioned the jury foreman and then declared a mistrial without consulting counsel or giving an *Allen* charge.

At the second trial, Lopez-Diaz, the police detectives, the DEA agent and a government chemist testified against Cawley. Over Cawley's objection, the judge allowed the DEA agent to testify regarding the actions he took in response to the informant's tips, but not the content of the tips themselves, and gave the jury a limiting instruction that the evidence was only admitted to explain the agent's course of conduct. Also over Cawley's objection, the judge allowed Lopez-Diaz to testify to statements made by Cawley's common law wife, Kathy Campbell, during phone conversations he had with her in early December, 1978, concerning the purchase of the heroin found in the van.

 In his testimony on direct examination, Lopez-Diaz acknowledged that he was a federal escapee, that he was living under a false name and had false identification in that name, that he had been convicted for prior narcotics offenses and that he had entered into a written plea bargain agreement, as described. He testified that the written agreement contained all the promises made to him by the government in exchange for his testimony. On cross-ex-

amination he admitted that he personally used cocaine and that he had offered to provide the DEA agent with information on drug dealers in exchange for consideration in his case. After Cawley was convicted, his attorney discovered that the government had sent a letter to the judge before Cawley's second trial was held recommending favorable treatment for Lopez-Diaz.[1]

Cawley first contends that he was subject to double jeopardy because the trial judge improperly declared a mistrial and ordered a retrial. He argues that the judge should have given an *Allen* instruction, admonishing the jury of its duty to reach a verdict and directing further deliberations to determine whether the jury was truly deadlocked, or at least should have consulted counsel for their positions on the issue.

 A mistrial may be declared and a defendant may be retried without violating the Fifth Amendment's provision against double jeopardy when "there is either (1) 'manifest necessity' for the discharge of the original proceedings, or (2) 'the ends of public justice' would otherwise be defeated." *Arnold v. McCarthy*, 566 F.2d 1377, 1386 (9th Cir. 1978). Jury deadlock is a classic example of manifest necessity for a mistrial. *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832–833, 54 L.Ed.2d 717 (1978); *Rogers v. United States*, 609 F.2d 1315, 1317 (9th Cir. 1979). The trial judge's decision to declare a mistrial when he or she considers the jury deadlocked is accorded great deference by a reviewing court, because the trial judge is in the best position to assess the relevant facts. *Arizona v. Washington, supra*, 434 U.S. at 509–10 and n.28, 98 S.Ct. at 832–833 and n.28; *Rogers v. United States, supra* at 1317. These factors include

> the jury's collective opinion that it cannot agree, the length of the trial and complexity of the issues, the length of time the jury has deliberated, whether the defendant has made a timely objection to

1. The letter was sent after Lopez-Diaz testified at Cawley's first trial. Lopez-Diaz had already been convicted but had not yet been sentenced.

the mistrial, and the effects of exhaustion or coercion on the jury.

*Rogers v. United States, supra* at 1317. An appellate court will consider these factors in determining whether a judge has properly exercised his or her discretion. *Arnold v. McCarthy, supra* at 1386.

The most critical factor is the jury's own statement that it is unable to reach a verdict. *Rogers v. United States, supra* at 1317; *Arnold v. McCarthy, supra* at 1387. However, the jury's statement' alone is an insufficient ground for declaring a mistrial. *United States v. See,* 505 F.2d 845, 851 (9th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). Upon receiving a communication from the jury stating that agreement cannot be reached, the judge must question the jury to determine independently whether further deliberations might overcome the deadlock. *Arnold v. McCarthy, supra* at 1387; *United States v. See, supra.* A judge can appropriately determine that there is a manifest necessity for a mistrial by questioning only the jury foreman. *Rogers v. United States, supra* at 1317. He need not give a further instruction nor consult with counsel. *See United States v. See, supra* at 852.

Here the jury sent a note to the judge stating that it could not agree after 3½ hours of deliberation, following a trial of 2½ days, concerning issues which were not very complex. Since the note was sent at about mid-afternoon, it is unlikely that the jury was exhausted. However, Cawley does not contend that he objected to the declaration of a mistrial.

His failure to object, and the fact that we have no record of what took place when the mistrial was declared, is critical here. A mistrial is declared when the jury is deadlocked as much to protect the defendant from being convicted by a coerced jury as to allow the prosecution a fair chance to present its case to an impartial jury. *See United States v. See, supra* at

851; *Arizona v. Washington, supra,* 434 U.S. at 505, 509, 98 S.Ct. at 830, 832. A timely objection by Cawley would have allowed the judge to reconsider whether the point of coercion had indeed been reached. Although the length of deliberation here, taken by itself, raises a question about whether it was too short to justify a mistrial, some factor revealed in his discussion with the jury foreman may have convinced the judge that further deliberation would be futile and that there was, therefore, a manifest necessity for a mistrial. We recognize that the burden is upon the government to justify the order declaring a mistrial if the order is entered over the defendant's objection, but here there was no objection. *Arizona v. Washington, supra,* 434 U.S. at 505, 98 S.Ct. at 830. We cannot conclude on the limited record before us that the judge abused his discretion.[2]

Cawley contends that his consent to the search of the van was not freely given. Whether consent was freely and voluntarily given is a question of fact and the district court's finding will not be overturned unless clearly erroneous. *United States v. Sierra-Hernandez,* 581 F.2d 760, 764 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. Dubrofsky,* 581 F.2d 208, 212 (9th Cir. 1978). Here the finding of consent is not clearly erroneous. Since there was nothing to indicate to the detective conducting the search that the pillowcases belonged to Lopez-Diaz, the judge did not err in finding that they were within the scope of Cawley's consent. The denial of the motion to suppress was not error.

Cawley also contends that the judge committed prejudicial error when he admitted evidence of the tips received by the DEA agent, because the tips were both hearsay and irrelevant. Although the content of the messages was not stated, Cawley argues that the agent's testimony concerning his activities after each tip revealed

---

**2.** Cawley had the opportunity to present this court with a more complete record pursuant to Fed.R.App.P. 10(c).

the substance of the tips and that the jury would infer that the tips pointed directly to Cawley's involvement with drugs and the transportation of drugs in his wife's van. However, with a proper instruction, the court may admit such evidence of tips as was admitted here to explain why an officer conducted an investigation as he did. *United States v. Brown*, 522 F.2d 10, 12 (9th Cir. 1975); *United States v. Walling*, 486 F.2d 229, 234 (9th Cir. 1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974); *United States v. Campbell*, 466 F.2d 529, 531 (9th Cir.), *cert. denied*, 409 U.S. 1062, 93 S.Ct. 571, 34 L.Ed.2d 516 (1972); *Busby v. United States*, 296 F.2d 328, 332 (9th Cir. 1961), *cert. denied*, 369 U.S. 867, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962).

■■■ Cawley contends that the district court erred in allowing Lopez-Diaz to testify to the statements Kathy Campbell made during phone conversations between her and Lopez-Diaz. The court ruled that the statements were admissible under Rule 801(d) of the Federal Rules of Evidence, which provides:

A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

Such statements are admissible even where there is no charge of conspiracy. *United States v. Snow*, 521 F.2d 730, 736 (9th Cir. 1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976); *United States v. Perna*, 491 F.2d 253, 255 (6th Cir.), *cert. denied*, 417 U.S. 934, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974). The statements can be admitted only if there is sufficient evidence, apart from the statements, to establish that a conspiracy existed and that the speaker and the defendant were part of the conspiracy. *United States v. Dixon*, 562 F.2d 1138, 1141 (9th Cir. 1977), *cert. denied*, 435 U.S. 927, 98 S.Ct. 1494, 55 L.Ed.2d 521 (1978); *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977); *United States v. Calaway*, 524 F.2d 609, 612 (9th Cir. 1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976).

■■■ Cawley argues that there was insufficient evidence here to establish that Kathy Campbell was involved in a conspiracy with Cawley and Lopez-Diaz. He argues that no testimony by Lopez-Diaz should be considered in determining if there is a conspiracy. We reject the argument. Lopez-Diaz's testimony about his own actions and statements and what he observed of Cawley's actions and statements is admissible. His testimony about his conversations with Cawley was sufficient to make a prima facie case of a conspiracy to distribute heroin, which is all the rule requires. *United States v. Calaway, supra* at 612. Once a conspiracy is shown to exist, evidence establishing beyond a reasonable doubt a defendant's connection—however slight—to that conspiracy is sufficient for his conviction for knowing participation in it. *United States v. Dunn*, 564 F.2d 348, 357 (9th Cir. 1977). *See United States v. Testa, supra* at 853. The evidence may be circumstantial. *United States v. Turner*, 528 F.2d 143, 162 (9th Cir.), *cert. denied*, 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1975).

"An otherwise innocent act of 'relatively slight moment,' may, when viewed in the context of surrounding circumstances, justify an inference of complicity. . ."

*United States v. Calaway, supra* at 612, quoting *United States v. Ragland*, 375 F.2d 471, 478 (2nd Cir. 1967). Here there was evidence that the van in which the heroin was found belonged to Kathy Campbell, that Cawley was driving the van with her permission, that Campbell and Cawley lived together as husband and wife, that the name "Kathy" appeared in Lopez-Diaz's address book along with Cawley's name and phone number, that Lopez-Diaz once called Cawley's phone number and told the woman who answered that he could obtain heroin, that Lopez-Diaz later called Cawley's number and talked to Cawley about bringing the heroin to Oregon after the woman who answered handed the phone to Cawley, and that Cawley called his home from Bend, Oregon, after picking up Lopez-Diaz. This evidence was sufficient to justify an infer-

ence that Kathy Campbell was involved in a conspiracy to distribute heroin with Cawley and Lopez-Diaz. The district judge did not err in admitting her statements.

Cawley contends that he was denied due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the government did not disclose, until after Cawley's conviction, its letter recommending favorable treatment in sentencing Lopez-Diaz. *Brady* holds that a defendant is denied due process when the government fails to disclose evidence which is material to guilt or punishment. Cawley argues that the letter could have been used to impeach Lopez-Diaz who was the only witness to directly link Cawley to the drugs. However, such impeachment would be possible only if sending the letter was promised to Lopez-Diaz as part of the plea bargain. Cawley has presented nothing to indicate that it was. *See United States v. Ramirez*, 608 F.2d 1261, 1266–67 (9th Cir. 1979). Further, in *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342 (1976), the Supreme Court defined "material" evidence under *Brady* as evidence which, considering the entire record, creates a reasonable doubt that did not otherwise exist. Here the letter, even if it could have been used to further impeach Lopez-Diaz, would have been merely cumulative since the fact of Lopez-Diaz's cooperation had been fully explored at trial. *United States v. Goldberg*, 582 F.2d 483, 490 (9th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979).

> Impeachment evidence, even that which tends to further undermine the credibility of the key Government witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist where that evidence is cumulative or collateral.

*United States v. Shelton*, 588 F.2d 1242, 1248 (9th Cir. 1978), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979). The letter was not *Brady* material.

We have reviewed Cawley's other contentions and find them to be without merit.

Affirmed.

PREGERSON, Circuit Judge (dissenting):

Following two days of trial testimony on April 16 and 17, 1979, the court reconvened on the morning of April 18 for argument by counsel and for the court's jury instructions. The jury began its deliberations at approximately 11:30 a. m. Working through the lunch hour, the jury continued to deliberate until approximately 2:30 or 3:00 p. m. At that time, counsel were summoned to return to the court. The trial judge did not inform counsel why they were being summoned, but brought the jury into the courtroom and then, in the presence of counsel, read a note from the jury to the effect that the jury was deadlocked. At that point, without consultation or consent of the defendant or his counsel, the trial court, *sua sponte*, discharged the jury and declared a mistrial.

I am unable to conclude that the trial court exercised the "sound discretion" that *Arizona v. Washington*, 434 U.S. 497, 516, 98 S.Ct. 824, 835–836, 54 L.Ed.2d 717 (1978), requires before mistrials are declared. Moreover, I am unable to say that "manifest necessity" for the mistrial existed or that "careful consideration [was accorded defendant's] interest in having the trial concluded in a single proceeding." 434 U.S. at 516–17, 98 S.Ct. at 835. The hour was not late, the jurors had not deliberated very long, the trial had taken the better part of two days, and there was no apparent confusion as to either the facts or the law on the part of the jurors.[1] Accordingly, I respectfully dissent.

---

1. Cawley's failure to object after the trial court, *sua sponte*, declared a mistrial does not preclude our consideration of this issue. *Cf. Arnold v. McCarthy*, 566 F.2d 1377, 1386–87 (9th Cir. 1978) (a timely objection is *one* of several factors useful in determining whether a judge has properly exercised his discretion to declare a deadlocked jury).