974 F.2d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Joan Betts DIPLARAKOS, Petitioner-Appellant,
v.
Susan POOLE, Warden, et. al., Respondent-Appellee.
 No. 91-55599.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 6, 1992.
Decided Sept. 14, 1992.
 
 Before BOOCHEVER, WILLIAM A. NORRIS and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Joan Betts Diplarakos, a California state prisoner, appeals the denial of her habeas corpus petition challenging her state convictions for grand theft. She argues that the disqualification of the only juror who did not believe in her guilt and the trial judge's interrogation of several jurors about their deliberations denied her due process and violated her sixth amendment right to an impartial jury. We AFFIRM.
 
 I. Dismissal of Juror Carter
 
 3
 Diplarakos argues that the trial court violated due process[1] when it dismissed juror Karen Carter, who was not convinced of Diplarakos' guilt. Based on interviews with Carter and four other jurors, the court found that Carter was disregarding jury instructions by using restitution as a defense, and that this was a failure to follow the law. RT 2167-68. The judge therefore replaced Carter with an alternate juror pursuant to Cal.Penal Code §§ 1089 and 1123, which provides for the discharge of a juror if the court finds "good cause" that a juror is "unable to perform [her] duty."[2]
 
 
 4
 This court reviews de novo a district court's denial of a habeas corpus petition. Bayramoglu v. Estelle, 806 F.2d 880, 886-87 (9th Cir.1986). In reviewing the district court's decision, the state court's factual determinations are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). See Rushen v. Spain, 464 U.S. 114, 120 (1983) (per curiam). A trial court's findings regarding juror fitness are entitled to special deference. Cf. Patton v. Yount, 467 U.S. 1025, 1036-38 & n. 12 (1984) (juror impartiality is a question of historical fact entitled to special deference). The state court's conclusion regarding juror impartiality may be set aside only if it lacks "fair support in the record," Bayramoglu, 806 F.2d at 887 (quoting Patton, 467 U.S. at 1038), and we apply the same standard here to the analogous issue of juror misconduct.
 
 
 5
 Here, the trial court's factual finding that Carter had failed to follow the law is fairly supported by the evidence. Separate interviews with four jurors revealed fairly consistent descriptions of Carter's statements during deliberations: Carter said she disagreed with the instruction stating that restitution is not a defense to theft or she said that the instruction did not mean what it said. See RT 2119-20 (Williams interview); RT 2123-24 (Des Jardien note) (reporting that Carter "argued that the 'fact' that the defendant planned to make restitution to the victims proved that she had no criminal intent"); RT 2129-30 (Des Jardien interview); RT 2157 (Castaneda interview); RT 2163 (Hart interview) (alleging that Carter stated that "the restitution, as long as [Diplarakos] made good later on, that it was all right."). Jurors also testified that the restitution instruction was read to Carter "over and over and over," RT 2157 (Castaneda), or "[e]leven dozen times." RT 2120 (Williams).
 
 
 6
 In contrast, Carter stated during her voir dire that she agreed that the restitution instruction was the law, and denied ever saying that she disagreed with the restitution instruction. RT 2145. She also denied that the restitution instruction had been referred to in a group deliberation; she said she had only discussed the instruction with one other juror. RT 2141.
 
 
 7
 Because the jurors' demeanor and credibility were critical in resolving these inconsistencies, the state court's finding that Carter was not following the law is entitled to deference. The court's implicit finding that Carter was less credible is supported by the consistency among the other jurors' recollections and the evasive nature of some of Carter's responses to the court.[3] See generally United States v. Shapiro, 669 F.2d 593, 601 (9th Cir.1982) (juror's belief in her own impartiality is not dispositive).
 
 
 8
 Diplarakos nonetheless contends Carter was dismissed because she inferred a lack of intent to defraud from evidence regarding the reorganization of First Home Investments (FHI) under Chapter 11 of the Bankruptcy Code. See 11 U.S.C. §§ 1101-1174 (1988). She asserts that Carter was entitled to consider such evidence and that such consideration constituted an improper basis for Carter's dismissal.
 
 
 9
 The record reveals conflicting evidence whether Carter had made a link between reorganization and a lack of criminal intent. For example, Note Q-4 from the jury does indicate that Carter had made such a connection:
 
 
 10
 One juror [Carter] feels that intent to defraud cannot be proven because the defendant had asked and filed for reorganization rather than bankruptcy. Eleven jurors feel that whether or not the defendant ... filed for reorganization rather than bankruptcy is not relevant. It is not the issue....
 
 
 11
 RT 2074; see also RT 2163 (Hart interview) ("That's what [Carter] keeps bringing [up], the reorganization, that it was all right because [Diplarakos] went into reorganization."). On the other hand, Carter herself denied drawing any conclusions between reorganization and the restitution instruction; moreover, she stated that it was not herself, but another juror who felt that the restitution instruction "has to do with reorganization." RT 2141-43.
 
 
 12
 We need not decide whether Carter was entitled to infer or did infer lack of intent from the reorganization, because sufficient evidence establishes that Carter also considered restitution as a defense, and that her belief in restitution as a defense--not reorganization--provided the basis for her dismissal. While the court recognized that the jurors felt Carter was treating reorganization as a defense, RT 2165, its decision to dismiss Carter was premised solely upon her failure to follow the restitution instruction. RT 2167-68. Furthermore, we are not persuaded by Diplarakos' argument that "[e]ven if [Carter] did use the word 'restitution' during deliberations, it remains clear she did not mean restitution as it is used in the jury instruction--she simply meant the defendant had no fraudulent intent." Petitioner's Reply Br. at 7. We decline petitioner's invitation to speculate that Carter really did not mean 'restitution' and to impute a different meaning to her words in the face of the trial judge's decision which is supported by consistent, corroborated accounts indicating that Carter was disregarding the restitution instruction. Accordingly, we conclude that the trial court's factual finding of juror misconduct is fairly supported by the record and that Carter's dismissal did not violate Diplarakos' right to due process.
 
 II. Interrogation of Jurors
 
 13
 Diplarakos also argues that the trial court's interrogation of the jurors violated her Sixth Amendment right to an impartial jury and deprived her of due process by delving into the jurors' thought processes and views of the law and evidence after deliberations had begun. Such questioning, she claims, not only led to the dismissal of Carter, but also made it impossible for the remaining jurors and the two alternate jurors to deliberate impartially.
 
 
 14
 Although the Sixth Amendment right to a unanimous jury verdict does not apply to state criminal trials, Apodaca v. Oregon, 406 U.S. 404 (1972), the right to an impartial jury does apply. Bayramoglu, 806 F.2d at 887. Erroneous or prejudicial conduct by the trial court "does not ipso facto fasten the taint of partiality, in the Sixth Amendment sense, upon a jury" or "necessarily transform an otherwise fair trial into one which offends ... due process." Vandergrift v. United States, 313 F.2d 93, 96 (9th Cir.1963). But due process is offended if a trial is conducted "in such a manner as amounts to a disregard of that fundamental fairness essential to the very concept of justice." Chavez v. Dickson, 280 F.2d 727, 735 (9th Cir.1960), cert. denied, 364 U.S. 934 (1961).
 
 
 15
 Here, the interrogation of jurors did not rise to the level of a Sixth Amendment or due process violation. Under California law, once the trial court was aware of the possibility of juror misconduct, it was required to conduct an inquiry to determine whether good cause existed to discharge the juror. People v. Burgener, 41 Cal.3d 505, 519-20, 714 P.2d 1251, 1260, 224 Cal.Rptr. 112, 121 (1986). Although Diplarakos suggests that the trial judge raised the issue of juror misconduct when one did not exist, the unsolicited notes from the jury raised a sufficient question about Carter's willingness to deliberate on all the counts in an openminded manner. It was only after the court had received the notes from Williams and Des Jardien raising serious allegations of juror misconduct that the judge questioned jurors other than Carter.
 
 
 16
 The record also indicates that Judge Hiroshige made conscientious efforts to limit the scope of inquiry and to preserve the impartiality of jury deliberations. See, e.g., RT 2149. He admonished all interviewed jurors not to discuss the substance of their voir dires with the others. Moreover, the new jury deliberated for another three days to reach verdicts on the 18 counts, thereby suggesting that they did not summarily adopt guilty verdicts on the basis of the earlier interrogations or pressure the two alternate jurors.
 
 
 17
 Diplarakos cites several cases for the proposition that a juror's dismissal may require a reversal of conviction if the dismissal precluded fair jury deliberation. See, e.g., United States v. Hernandez, 862 F.2d 17 (2nd Cir.1988) (reversing conviction due to removal of sole juror favoring acquittal and due to judge's comments commending remaining jurors for efforts to persuade the dismissed juror), cert. denied, 489 U.S. 1032 (1989); United States v. Brown, 823 F.2d 591 (D.C.Cir.1987) (juror cannot be dismissed during deliberations if juror's request for dismissal may have stemmed from juror's doubts about the evidence).
 
 
 18
 These cases, however, not only are factually distinguishable from Diplarakos' case, but were all decided on direct review. None identified an error of constitutional magnitude warranting a grant of writ of habeas corpus. Cf. Fennell v. United States, 313 F.2d 941, 942 (10th Cir.1963) (per curiam) (28 U.S.C. § 2255 collateral relief denied where communications between judge and jury during deliberations did not violate constitutional rights, even if there might have been error on direct appeal). Under the difficult circumstances faced by the trial court in this case, we find that the questioning of jurors to determine whether juror misconduct existed did not violate Diplarakos' constitutional rights.
 
 III. Coercion of the Verdict
 
 19
 Finally, Diplarakos claims that the trial court coerced the verdict in violation of the Sixth Amendment and due process. By excusing the only dissenting juror, Diplarakos contends that the trial judge substituted his judgment for that of Carter's.
 
 
 20
 While a defendant has no right to a "hung" jury, she does "have the right to have the jury speak without being coerced." United States v. Sawyers, 423 F.2d 1335, 1341 (4th Cir.1970). In this case, the overall record does not support Diplarakos' claim. After interviewing Carter, the court told the jury it was not making any judgment about the deliberations and instructed the jury to continue deliberating in an openminded manner. RT 2111. The questions to Des Jardien, Williams, Castaneda, and Hart were generally framed in an open-ended manner, see, e.g., RT 2117-28, 2156-59, and the court's instructions to the newly assembled jury after Carter's dismissal were in neutral terms, without expressing approval or disapproval of any particular view of the evidence or the law. RT 2171-72.
 
 
 21
 Diplarakos also argues that the trial judge's failure to grant a mistrial deprived her of the right to an uncoerced jury verdict. A trial judge's decision whether to grant a motion for mistrial when he considers the jury deadlocked is accorded great deference, because the trial judge is in the best position to evaluate the relevant facts. United States v. Cawley, 630 F.2d 1345, 1348 (9th Cir.1980). If the jury states that it cannot agree, the judge is required to question the jury to determine whether the deadlock could be overcome by further deliberations. Id. at 1349.
 
 
 22
 We find no abuse of discretion which violated Diplarakos' right to an impartial jury. Upon inquiring about the "deadlock," the trial court found that the jury was not in fact deadlocked, because it had not deliberated on all the counts, RT 2073-74, and because Carter had not reached a decision regarding petitioner's guilt or innocence.[4] RT 2100-04. The fact that the trial had taken eight weeks and the possibility that further instruction on the law might overcome the impasse also supported its decision to deny the motion for a mistrial. See generally Cawley, 630 F.2d at 1348-49 (listing factors to be considered in deciding whether to grant a motion for mistrial) (quoting Rogers v. United States, 609 F.2d 1315, 1317 (9th Cir.1979)). Nor did the court abuse its discretion in choosing to invoke the juror substitution process rather than grant a mistrial in order to remedy Carter's failure to follow jury instructions. We have held that this substitution procedure "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." Miller v. Stagner, 757 F.2d 988, 995 (9th Cir.), amended by 768 F.2d 1090 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986). We therefore conclude the removal of juror Carter and the denial of the motion for a mistrial did not lead to a coerced verdict.
 
 
 23
 The district court's denial of the habeas corpus petition is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In her briefs, Diplarakos alleges a violation of her Fifth Amendment right to due process. Because Diplarakos was convicted in state court, we construe her claim as one alleging a deprivation of her Fourteenth Amendment right to due process
 
 
 [2]
 Cal.Penal Code § 1123 reads in relevant part:
 If before the jury has returned its verdict into court, a juror becomes sick or upon other good cause shown to the court is found to be unable to perform his duty, the court may order him to be discharged. If any alternate jurors have been selected as provided by law, one of them shall then be designated by the court to take the place of the juror so discharged.
 Cal.Penal Code § 1123 (West 1985), repealed by Stats.1988, c. 1245, § 42. The trial judge also relied on Cal.Penal Code § 1089, which sets forth the procedures for the use of alternate jurors.
 
 
 [3]
 For example, jurors Des Jardien, Castaneda, and Hart separately recounted a hypothetical related to the embezzlement instruction to illustrate Carter's failure to follow the law. Carter allegedly indicated that it was acceptable for one to take $200 given to her to buy luggage and to do something else with the money as long as one intended to repay the money. See RT 2126 (Des Jardien); RT 2158-59 (Castaneda); RT 2162 (Hart). After asking Carter whether any such conversation took place, the court asked what connection she saw between the luggage hypothetical and the embezzlement instruction. Carter replied:
 Umm--I'm not certain that that--I don't think that that was necessarily--that that subject was brought up and that that was the example I gave. That doesn't seem clear. I have forgotten exactly what it was.
 RT 2145.
 
 
 [4]
 Carter's statements to the court suggested she had not yet reached a decision regarding innocence or guilt. She told the court she needed more time to look into the records and that the other jurors felt she should have made up her mind after eight weeks of trial. RT 2100-01