**UNITED STATES of America, Plaintiff-Appellant,**

v.

**William SHAFFER, Defendant-Appellee.**

No. 85–5127.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1986.

Decided May 5, 1986.

Richard R. Romero, Christine Byrd, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Howard L. Weitzman, Weitzman & Furstman, Santa Monica, Cal., defendant-appellee.

Before FARRIS, PREGERSON, and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge.

Appellee William Weitz Shaffer was convicted on several counts of narcotics and income tax violations. The district court granted Shaffer's motion for a new trial, concluding that the government's failure to disclose to Shaffer certain impeachment evidence regarding a government witness violated the rule set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government appeals the district court's decision. We affirm the district court's order granting a new trial.

## BACKGROUND

On September 16, 1981, a grand jury returned a superseding indictment charging Shaffer and three other defendants with four counts of narcotics violations and four counts of income tax violations.[1] The indictment alleged that, from February 1975 to April 1977, the four defendants conspired to import and distribute cocaine.

The government's case against Shaffer rested in large part on the testimony of Robert Durand, an unindicted co-conspirator in the cocaine operation. In May 1980, Durand, in exchange for immunity from prosecution, agreed to cooperate with the government in an investigation into the cocaine operation conducted by Shaffer and the other three defendants. During the investigation of Shaffer, Durand was paid

---

1. The other three defendants indicted were: James Hoffman, Barron Bingen, and Joseph Hylan.

for his expenses in meeting with IRS and DEA agents. In February 1982, Durand was also paid for expenses incurred in traveling to Los Angeles to prepare for Shaffer's trial. During the trial, Durand was also paid for security expenses, and after the trial, he was paid for security and relocation expenses.

During the cocaine investigation, one of Shaffer's indicted co-conspirators, James Hoffman, contacted Durand about a separate heroin operation that Hoffman wanted to conduct. Shaffer was not involved in this new narcotics operation. With the aid of Durand, the government conducted a supplemental investigation into Hoffman's heroin operation from approximately September 1980 to May 1981. During the Hoffman investigation, the government compensated Durand for expenses incurred in meeting with Hoffman. Durand also received money that he paid to Hoffman and another subject for their expenses in setting up the smuggling venture. Therefore, while Durand was testifying in the Shaffer grand jury proceedings, he was also operating as a paid informant in the Hoffman investigation.

Before his trial, Shaffer made a specific discovery request concerning: (1) any promises that the government made to Durand in exchange for his cooperation; (2) Durand's tax returns for the time period charged in the indictment; and (3) internal government memoranda regarding Durand's cooperation. Shaffer also made a general request for all material in the government's possession that was favorable and material to his defense. In response, the government provided Shaffer with a copy of Durand's grand jury testimony and Durand's immunity agreement.

The immunity agreement provided, in essence, that: (1) the government would not prosecute Durand for any of his criminal activity in the Shaffer narcotics operation; (2) any information provided by Durand would not be used by the government against him except in a prosecution for perjury; and (3) Durand would not be subject to any criminal tax prosecution through the calendar year 1981, but the U.S. Attorney would nonetheless notify the IRS about any information relative to any civil audit or investigation of Durand. The government stated that this immunity agreement was the complete agreement with Durand; and that no separate secret or other agreement was made with Durand.

At Shaffer's trial, Durand implicated Shaffer in the cocaine operation. Durand testified, *inter alia,* about the smuggling trips conducted by the conspirators and the enormous profits realized by Shaffer and the others on the cocaine operation. On May 7, 1982, a jury convicted Shaffer of all eight counts.

Approximately two years after his conviction, Shaffer filed a motion for new trial, pursuant to Fed.R.Crim.P. 33, based on newly discovered evidence. As a result of evidence revealed at an evidentiary hearing on this motion, Shaffer contended that the government failed to disclose to him prior to trial: (1) that Robert Durand was a paid informant in Hoffman's separate heroin operation during the years 1980 and 1981; (2) the full benefits and expense payments that Durand received in exchange for his cooperation in both narcotics investigations; (3) the full extent of assets which Durand acquired through narcotics profiteering; and (4) the fact that the government has failed to initiate any civil tax proceedings against Durand. Shaffer argued that these facts, if used at trial, would have had a substantial effect on Durand's credibility, and would have resulted in Shaffer's acquittal.[2]

On February 14, 1985, the same district court judge who presided over the trial granted Shaffer's motion and ordered a new trial. The district court held that "Du-

---

**2.** We note that Shaffer became aware of Durand's role as a paid government informant in the Hoffman investigation only as a result of information disclosed to Shaffer's trial counsel during his representation of a different defendant in a different trial. The criminal activity surrounding this second trial did not involve Shaffer.

rand's testimony was critical to Shaffer's conviction ... [and if] the jury chose not to believe Durand, it is quite possible that Shaffer would not have been convicted." The district court further held that the information revealed in the evidentiary hearing, if used at trial, "creates reasonable doubt that would not otherwise exist and certainly creates the reasonable possibility of a material effect on the jury."

■ On March 11, 1985, the government filed a motion for reconsideration, which was denied by the court on April 29, 1985. On May 28, 1985, the government filed a notice of appeal from both orders.[3]

## DISCUSSION

### A. JURISDICTION

The government asserts that this court has jurisdiction over this appeal pursuant to 18 U.S.C. § 3731.[4] The government maintains that its newly acquired right of appeal in section 3731 became effective when the Crime Control Act ["Act"] was signed into law on October 12, 1984. Accordingly, the government claims that this new right of appeal would apply to the district court's order of February 15, 1985, granting the new trial motion.

Shaffer contends, however, that the language amending section 3731 will not take effect until November 1, 1986. Shaffer argues that this amending language is subject to the effective date provision set forth in section 225 of the Act. Section 225 of the Act provides that "[t]his chapter shall take effect on the first day of the first calendar month beginning twenty-four months after the date of enactment [i.e. November 1, 1986]...."

■ Section 225 was enacted as part of Chapter II of the Act. The amendment to 18 U.S.C. § 3731, upon which the government bases its right to appeal, however, is not found in Chapter II of the Act; the amendment was enacted under Chapter XII of the Act.Pub.L. 98–473, § 1206, 98 Stat. 1837, 2153 (1984). Consequently, Shaffer errs in asserting that the amendment to section 3731 is governed by the November 1, 1986 effective date found in section 225 of the Act.

■ Because neither the statutory language amending section 3731 nor its legislative history specifically prescribes the effective date upon which the statute was to take effect, this issue must be resolved under general principles of statutory construction. "In the absence of an express provision in the statute itself, an act takes effect on the date of its enactment." *United States v. Clizer*, 464 F.2d 121, 123 n. 2 (9th Cir.), *cert. denied*, 409 U.S. 1086, 93 S.Ct. 697, 34 L.Ed.2d 673 (1972) (citing *Arnold v. United States*, 13 U.S. (9 Cranch) 103, 119 (1815)); *see also United States v. Affleck*, 765 F.2d 944, 948 (10th Cir.1985) (holding that, absent Congressional intent to the contrary, another section of the Crime Control Act of 1984 became effective upon its enactment on October 12, 1984).

---

**3.** The government's notice of appeal appears to be untimely because it was filed beyond the thirty day period allowed in 18 U.S.C. § 3731 for the government to appeal an order granting a new trial. However, the filing of a petition for reconsideration within this thirty day period tolls the time for filing the notice of appeal. *United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976) (per curiam); *United States v. Healy*, 376 U.S. 75, 77–80, 84 S.Ct. 553, 554–57, 11 L.Ed.2d 527 (1964); *United States v. Jones*, 608 F.2d 386, 390 (9th Cir.1979); *Nilson Van & Storage Co. v. Marsh*, 755 F.2d 362, 364–65 (4th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985). Accordingly, the government has thirty days from the denial of its motion for reconsideration to file a notice of appeal. Thus, the government's notice of appeal filed in this case on May 28, 1985 was timely because it was within thirty days of the district court's April 29, 1985, denial of the government's motion for reconsideration filed within thirty days of the order granting a new trial.

**4.** The government points to the language of section 3731 which authorizes an appeal by the United States from a decision, judgment or order of the district court "granting a new trial after verdict or judgment as to any one or more counts...." *Id.* This new provision of the statute was added through the Comprehensive Crime Control Act of 1984. Pub.L. No. 98–473, § 1206, 98 Stat. 1837, 2153 (1984) ("the Act").

Applying these principles to this case, we hold that 18 U.S.C. § 3731, as amended by section 1206 of the Crime Control Act of 1984, gives this court jurisdiction to hear the government's appeal. *See also Nilson Van & Storage,* 755 F.2d 362, 364–65, (4th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985); *United States v. Draper,* 762 F.2d 81, 82 (10th Cir.1985) (citing with approval *Nilson Van Storage* as the basis for its earlier order which allowed the government to invoke the new provision of section 3731 as the basis for appealing a district court order of October 24, 1984 granting a new trial).[5]

## B. STANDARD OF REVIEW

We review the order granting a motion for a new trial pursuant to Fed.R. Crim.P. 33 for abuse of discretion. *United States v. Steel,* 759 F.2d 706, 713 (9th Cir. 1985) (appellant carries "significant burden" to show abuse); *United States v. Falsia,* 724 F.2d 1339, 1343 (9th Cir.1983) (same).

## C. DISCUSSION

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the failure of the prosecutor to disclose evidence that is both favorable to the accused and material to either guilt or punishment violates due process. "The *Brady* rule is based on the requirement of due process. Its purpose is ... to ensure that a miscarriage of justice does not occur ... [by requiring the prosecutor] to disclose evidence favorable to the accused that, if supressed, would deprive the defendant of a fair trial...." *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). In decisions after *Brady,* the Court has also held that evidence impeaching the credibility of a key government witness, as well as exculpatory evidence, falls under the *Brady* doctrine. *Bagley,* 105 S.Ct. at 3380; *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *accord United States v. Butler,* 567 F.2d 885, 890 (9th Cir.1978). Consequently, our initial inquiry is to determine whether the nondisclosed material regarding Durand was "material" to Shaffer's defense.

Before its decision in *Bagley,* the Court set forth three different standards for determining whether the suppressed or undisclosed information was material so as to deny the defendant his due process right to a fair trial. These three standards for materiality were enunciated in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Under the first standard stated in *Agurs,* if the prosecutor knew or should have known that his case contained perjured testimony, then the conviction "must be set aside if there is any reasonable likelihood that this evidence could have affected the judgment of the jury." *Id.* 427 U.S. at 103, 96 S.Ct. at 2397. Under the second standard, the prosecutor's failure to respond to a defendant's request for specific information will result in a new trial if the suppressed evidence "might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2398; *accord, United States v. Goldberg,* 582 F.2d 483,

---

5. Alternatively, the government asserts that this court has jurisdiction because the government has a right to appeal from an order granting relief under 28 U.S.C. § 2255 (collateral attack of a judgment). While it is true that this statute does allow the government to appeal a motion granted under 28 U.S.C. § 2255, *D'Allesandro v. United States,* 517 F.2d 429, 435–36 (2d Cir. 1975), this right of appeal, simply has no application to the instant case. Shaffer did not seek relief under 28 U.S.C. § 2255. As his moving papers indicate, Shaffer brought a motion in the district court solely under Fed.R.Crim.P. 33 and the district court granted the motion pursuant to this rule. Moreover, equally unavailing is the government's contention that it has a right to appeal under section 2255 because the lower court's granting of Shaffer's Rule 33 motion may be considered in substance as the granting of a motion under section 2255. This unsupported assertion ignores the fact that these two remedies are separate and distinct means of attacking a judgment. *Bruno v. United States,* 180 F.2d 393, 394–95 (D.C.Cir.1950); *United States v. Ostrer,* 422 F.Supp. 93, 95–96 (S.D.N.Y. 1976). Consequently, we reject the government's argument that the district court's order should be considered a granting of a motion under 28 U.S.C. § 2255.

489 (9th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979) (reasonable possibility that error materially affected the verdict). The third standard applies where the defendant fails to request, or only generally requests, exculpatory evidence. Here, reversal is necessary if the undisclosed evidence "creates a reasonable doubt that did not otherwise exist." *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2398; *Goldberg,* 582 F.2d at 489.

In its order of February 14, 1985, the district court held that Shaffer had made both a specific request for information concerning Robert Durand, and a general request for all evidence favorable and material to his defense. The district court, in applying the tests set forth in *Agurs* and *Goldberg,* further held that under both the "reasonable possibility" test for specific requests, and the more stringent "reasonable doubt" test for general requests, a new trial was required.

As noted above, however, following the district court's determination, the Court set forth a new standard for determining when the withholding of Brady material requires the reversal of a conviction. *United States v. Bagley,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

In *Bagley,* the defendant was charged with narcotics and firearm violations. Before trial, Bagley filed discovery motions, requesting the prosecutor to disclose whether the government paid or promised compensation to any of its witnesses. The government responded by filing affidavits from two government witnesses, each of whom stated he never expected nor received compensation. The defendant was subsequently convicted of the narcotics but not the firearms violations. *Id.* 105 S.Ct. at 3377–78.

Following his conviction, Bagley moved to vacate his sentence, alleging that the government had withheld *Brady* material from him. Specifically, Bagley contended that the government had failed to disclose to him that two key government witnesses had received compensation from the government both before and after trial.

*Id.* at 3378. The district court denied the motion, holding that, even if the agreements with the witnesses had been disclosed, it would not have changed the result at trial. *Id.* at 3379. The court noted that the government witness had testified about the firearms violations and the defendant had been acquitted of those charges. *Id.* We reversed, holding that the failure to disclose this *Brady* material threatened the defendant's right to cross-examination and required automatic reversal. *Id.; see Bagley v. Lumpkin,* 719 F.2d 1462 (9th Cir.1983), *rev'd,* — U.S. ——, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

The Supreme Court held that automatic reversal was not required in Bagley's case. 105 S.Ct. at 3384–85. In so holding, the Court set forth a uniform standard for determining when the withholding of *Brady* material by the government requires reversal. The Court noted that *Brady* only requires the government to disclose information "material either to guilt or punishment." *Id.* at 3379. The Court then stated that the conviction must be reversed "only if evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* at 3381. Accordingly, we must decide the appeal at bar in accord with the materiality standard set forth in *Bagley.*

■ Using the *Bagley* standard set forth above, we conclude that the information withheld from Shaffer regarding Durand was material and should have been disclosed by the government.

Specifically, Shaffer alleged that the government failed to disclose: (1) that Robert Durand was a paid informant in a separate heroin operation during the years 1980 and 1981; (2) the full benefits and promises that Durand received in exchange for his cooperation; (3) the full extent of Durand's assets; and (4) the status of Durand's tax liability. Shaffer argued that these facts, if used at trial, would have had a substantial effect on Durand's credibility and would have resulted in Shaffer's acquittal.

Because Durand's testimony implicating Shaffer was critical to Shaffer's convic-

tion,[6] the jury's assessment of Durand's credibility was crucial to the outcome of the trial. Therefore, if the jury had not believed Durand, Shaffer may not have been convicted. Consequently, we must determine whether the district court correctly held that the newly discovered evidence, if used at trial, would have discredited Durand.

As noted earlier, evidence affecting the credibility of a government witness has been held to be material under the *Brady* doctrine. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Butler*, 567 F.2d 885, 890 (9th Cir.1978).[7] Examining the newly discovered evidence, we conclude that this evidence, had it existed, could have been used to discredit Durand. Specifically, Durand's involvement in the heroin investigation contradicts his prior testimony that he had never participated in any heroin transaction. Furthermore, the facts surrounding the government's payment of Durand's expenses—the use of round numbers in detailing Durand's expenses on government forms and the failure to provide receipts for these expenses—could have been construed as evidence that Durand was paid for his cooperation. Also, the government's failure to disclose that Durand did in fact have assets which were acquired through drug profiteering (i.e., a house in Palm Springs and funds to enter a health spa), coupled with the government's failure to initiate asset forfeiture proceedings to acquire these assets, implies that a tacit agreement was reached between Durand and the government that allowed Durand to avoid any asset forfeiture liability in exchange for his cooperation. Finally, testimony at the hearing for a new trial indicated that the government had yet to enforce Durand's civil tax liability for unpaid taxes. This contradicts the government's earlier representation, as expressed in the immunity agreement, that Durand would be required to pay a civil tax liability promptly. This lends further credence to the conclusion that Durand was paid in the form of leniency for his cooperation.

We conclude, therefore, that the government's failure to disclose the impeachment evidence regarding Durand "undermines confidence in the outcome of [Shaffer's] trial." *Bagley*, 105 S.Ct. at 3381. Accordingly, the district court did not abuse its discretion in holding that the evidence discussed above was material to the case and required disclosure. Affirmance of the district court's conclusion on this matter is all the more appropriate where, as in this case, the district court judge's conclusion was based both on his observations at trial and on his review of the evidence offered in support of the new trial motion. As the Second Circuit has held: "[W]e find it important to give deference to the conclusions of the trial judge whose presence at the proceedings gives him a far better vantage than our own for this determination." *United States v. Bermudez*, 526 F.2d 89, 101 (2d Cir.1975), *cert. denied*, 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976).

■ Having concluded that the evidence is material, we must now determine whether the district court correctly held that the information was not adequately disclosed to the defendant. For the rea-

---

**6.** Although the government attempted to corroborate Durand's testimony with the testimony of innocent third parties who accompanied Durand and Hoffman on several smuggling trips, this testimony did not corroborate any of the illegal importation and distribution acts detailed by Durand.

**7.** We reject the government's contention that this type of impeachment strategy, emphasizing the scope of the witness' cooperation with the government, is not material to warrant a new trial. *See Goldberg*, 582 F.2d at 490. It is true that in *Goldberg* we held that the impeachment evidence proffered would not be useful to the

defendant. However, we based this conclusion on the fact that "[the cooperation of the government witness] was fully explored at trial," and the evidence "would have [only] given advance notice of the prosecutor's questions—evidence of this character is not 'material to guilt.'" *Id.*

In *Goldberg* we went on to hold that: "[t]he only legitimate purpose to which [this evidence could] have been put is the further illustration of the extent of the [government witness' cooperation]." *Id.* This is precisely the purpose for which Shaffer's counsel would have used the evidence at issue in this case.

sons given below, we conclude that the government did not adequately disclose this information to Shaffer.

First, it appears that the government did not give Shaffer sufficient notice of Durand's involvement in the Hoffman heroin investigation. At most, the record discloses that Shaffer was informed that Hoffman was involved in a heroin deal, and that Hoffman had contacted Durand. At no time did the government disclose that Durand was involved in an undercover capacity in the government's investigation of Hoffman's heroin operation.

■ Second, the district court was correct in holding that, while the government did apprise Shaffer's counsel of tapes that detailed Durand's involvement, such disclosure was inadequate because the government also told Shaffer's counsel that these tapes would be of no value to Shaffer's defense. This later statement by the government negates any disclosure made in the earlier statement. *See Hughes v. Hopper*, 629 F.2d 1036, 1039 (5th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981) ("defense counsel's knowledge of the [evidence is] effectively nullified ... when a prosecutor misleads the defense into believing the evidence will not be favorable to the defendant").

■ The government also makes the unsupported assertion that, because the tapes were disclosed to Shaffer's co-defendant, they were effectively disclosed to Shaffer. However, because the trial strategies of co-defendants often conflict (*i.e.*, each may seek to place liability solely on the other), we do not think it prudent to allow the government to satisfy its due process requirements to each of several defendants by merely giving exculpatory evidence to one defendant.

■ With regard to the payment of Durand's expenses, the government asserts, in essence, that Shaffer's counsel was aware of expenses paid to Durand, yet chose not to ask for the details regarding these payments. The government correctly asserts that Shaffer cannot claim a *Brady* violation if he was "aware of the essential facts enabling him to take advantage of

any exculpatory evidence...." *United States v. Brown*, 582 F.2d 197, 200 (2d Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978); *United States v. Dupuy*, 760 F.2d 1492, 1501 n. 5 (9th Cir.1985). However, while Shaffer was aware that Durand was being paid his expenses in connection with the Shaffer proceedings, he was unaware that Durand was also being paid expenses for his involvement in the separate Hoffman heroin investigation. Accordingly, Shaffer could not request any details on this information because he did not know such information even existed.

■ In ruling on the evidence surrounding Durand's civil forfeiture liability, the district court held that the government had failed to disclose that Durand had acquired through his drug profiteering a house in Palm Springs and the funds which would allow him to enter a health spa. The fact that these assets were not disclosed, coupled with the government's failure to proceed in a civil forfeiture action, could be construed to imply a tacit agreement between Durand and the government that the government would not proceed against Durand in a civil forfeiture action.

The government contends that, because there was no explicit agreement on this matter, it had nothing to disclose. *See United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 824 (9th Cir.1985), *cert. denied*, ── U.S. ──, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1984); *United States v. Goldberg*, 582 F.2d at 490. Apparently the government misunderstands the district court's ruling. While it is clear that an explicit agreement would have to be disclosed because of its effect on Durand's credibility, it is equally clear that facts which imply an agreement would also bear on Durand's credibility and would have to be disclosed. *See Butler*, 567 F.2d at 888. Indeed, as the Eleventh Circuit has observed: "[I]f the arguably exculpatory statements of witnesses ... were in the prosecutor's file and not produced, failure to disclose indicates the 'tip of an iceberg' of evidence that should have been revealed under *Brady.*" *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir.1983).

This conclusion seems directly applicable to the facts in the instant appeal. The failure to disclose the extent of Durand's assets is exculpatory material that could indicate the "tip of the iceberg" of a secret deal of leniency.

Finally, the district court was also correct in holding that the government's failure to pursue Durand's civil income tax liability was not adequately disclosed to Shaffer. The rationales of *Butler* and *Griggs* apply directly to this issue. This undisclosed fact indicates the "tip of the iceberg" of a secret deal that the government would not enforce Durand's civil tax liability in exchange for his cooperation.

In sum, we hold that the district court did not abuse its discretion by concluding that the *Brady* information at issue in this case was material to Shaffer's defense and that the information had not been adequately disclosed. The government's failure to disclose the *Brady* information at issue in this case undermines our confidence in the outcome of Shaffer's trial. Accordingly, we affirm the district court's order granting Shaffer a new trial.

AFFIRMED.