892 F.2d 84
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald Michael DINI, Defendant-Appellant.
 No. 88-1226.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 16, 1989.
Decided Dec. 11, 1989.
 
 Before FARRIS, PREGERSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gerald Dini appeals his conviction by jury-trial of interstate transportation of stolen securities in violation of 18 U.S.C. 2314, bank fraud in violation of 18 U.S.C. 1344, and conspiracy to commit bank fraud in violation of 18 U.S.C. 371. Dini contends that the district court erred in (1) denying his pre-trial request for Brady material, (2) denying his motion for mistrial based on a comment made by the trial judge in the presence of the jury, and (3) denying his request for admission into evidence of a tape recording. Dini also requests that we vacate the special assessment that the district court imposed against him. We find that none of the district court's actions constitutes reversible error, but remand the special assessment issue for a ruling consistent with the Supreme Court's upcoming decision in United States v. Munoz-Florez, 863 F.2d 654 (9th Cir.1988), cert. granted, 58 U.S.L.W. 3212 (1989).
 
 I. BACKGROUND
 
 3
 In January of 1985, Aetna Casualty Insurance Company (Aetna) claims manager Lloyd Koty ordered a set of blank Aetna claims checks from the Aetna office in Phoenix, Arizona, to be mailed to him at the Aetna office in Tucson, Arizona. The checks were mailed, but Koty never received them. Gerald Dini was the office manager in the Tucson office and was among those with keys to the mail box where the blank Aetna claims checks were to be delivered. Sixteen of the checks, totaling $231,690.15, were deposited without authorization shortly thereafter in the National Commodities Exchange (NCE) bank account at Union Bank. These checks had been filled out with special Aetna coding and had been forged with the signatures of Tucson office personnel who were authorized to sign Aetna claim checks. Numerous checks were then written on the NCE account directly to Dini, to businesses owned by Dini, to businesses owned by friend and co-defendant Ken Byrnes, and to organizations connected with Dini and Byrnes. Dini acknowledged receiving $80,000 from these checks which totaled over $200,000.
 
 
 4
 Before January of 1985, the NCE account had been opened and was being handled by Dr. Eugene Burns for the purpose of obtaining financial privacy for depositors. Dr. Burns had at one time been the subject of an IRS investigation. The NCE bank account pooled the funds of its members, while individual members' sub-accounts were tracked by Dr. Burns' sister and secretary, Mary Alice Rohier.
 
 
 5
 Ken Byrnes was, at the time these events took place, an associate of Dini's and was also an associate of Dr. Burns. Dr. Burns testified that, in January of 1985, Byrnes introduced him to two men who wished to participate in the NCE account. These men identified themselves to Dr. Burns and Rohier as Robert Morehead and Karl Moore. Morehead and Moore became members of the NCE account, opened their sub-accounts using two of the missing Aetna drafts, and subsequently deposited fourteen additional missing Aetna drafts in the NCE account. Morehead and Moore withdrew funds from their sub-accounts by writing checks on the NCE account. As mentioned above, these checks totaled over $200,000 and were made out to Dini, to businesses owned by Dini, to businesses owned by Byrnes, and to organizations connected with Dini and Byrnes. Rohier made out Moore's checks according to Moore's instructions, but Morehead made out his own checks in Rohier's presence.
 
 
 6
 At trial, both Dr. Burns and Rohier identified Morehead as Dini. Each had also selected Dini from a 12-photo display before the trial. A fingerprint expert testified that Dini's fingerprints were on one of the missing Aetna drafts which had been deposited into the NCE account, on two deposit tickets used to deposit two of the missing drafts, and on two NCE checks written by "Morehead." Further, a handwriting expert testified that Dini's handwriting appeared on NCE checks written by "Morehead." The fingerprint expert also found co-defendant Byrnes' prints on another missing Aetna draft which had been deposited into the NCE account.
 
 
 7
 In their statements to FBI special agent Edward Hall, both Dini and Byrnes insisted that they had never seen or handled the negotiations of these instruments. Dini explained to Hall that Morehead approached Dini and advised him that he wished to open a bank account with limited identification. Dini stated further that he and Morehead had an agreement under which Dini was to cash NCE checks for Morehead in return for fifty percent of the proceeds received by Morehead. Dini also told Hall that the $80,000 Dini received from the NCE account was a personal loan from Morehead, but that no paperwork had been drafted to substantiate the loan.
 
 II. DISCUSSION
 A. Brady Material
 
 8
 Appellant Gerald Dini contends that the government did not adequately respond to his general request for all Brady materials. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, Dini argues that the prosecution violated the Brady rule by failing to produce files maintained by the Internal Revenue Service, and other federal agencies, containing information relating to prosecution witness Dr. Eugene Burns. Dini, who has not had access to these files, speculates that they contain information that could have been used to impeach Dr. Burns' testimony, and that therefore there is a reasonable probability that he would not have been convicted had these files been produced.
 
 
 9
 We review alleged Brady violations de novo. United States v. Kennedy, 869 F.2d 1336, 1338 (9th Cir.1989).
 
 
 10
 In Brady, the Supreme Court held that a criminal defendant's due process rights are violated when the prosecution, upon request, fails to produce evidence in its possession which is both favorable to the accused and material to either guilt or punishment. In later decisions, the Court has also held that evidence that could be used to impeach the credibility of a key government witness falls within Brady's definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); accord United States v. Anderson, 813 F.2d 1450, 1458 (9th Cir.1987); United States v. Shaffer, 789 F.2d 682, 687 (9th Cir.1986).
 
 
 11
 Such evidence is material, however, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682; United States v. Tham, Nos. 88-1396, 88-1445, slip op. at 11031, 11040 (9th Cir. Sept. 7, 1989); Anderson, 813 F.2d at 1458-9. When the defendant asserts that the undisclosed evidence would have been used to impeach a witness, there are two components implicit to the "reasonable probability" determination: (1) the likelihood that the undisclosed evidence would have in fact impeached the witness, and (2) the likelihood that impeachment of the witness would have altered the outcome of the proceeding. See Giglio v. United States, 405 U.S. 150, 154 (1972); Shaffer, 789 F.2d at 688-89 (9th Cir.1986) ("[We find that] the jury's assessment of Durand's credibility was crucial to the outcome of the trial.... Consequently, we must determine whether the district court correctly held that the newly discovered evidence, if used at trial, would have discredited Durand."). In this case, we need not reach the question whether the undisclosed evidence would have impeached Dr. Burns.[1] For we find that, even if the undisclosed evidence would have impeached Dr. Burns, there is not a reasonable probability that this impeachment would have affected the outcome of the trial.
 
 
 12
 It is unlikely that the impeachment of Dr. Burns' testimony would have resulted in the acquittal of Dini. First, the government presented strong independent evidence of Dini's guilt, including evidence that: the stolen drafts had been mailed to Dini's office mailbox to which Dini had a key, Dini's fingerprints were found on a stolen Aetna draft which he denied having seen or touched, Dini's fingerprints were found on deposit tickets from the NCE account in Robert Morehead's name, Dini's handwriting appeared on the NCE checks made out on "Morehead's" account, and all of the proceeds of the stolen checks negotiated in Arizona went to Dini and his associates.
 
 
 13
 Second, the significant aspect of Dr. Burns' testimony, the identification of the man who called himself "Morehead" as being Gerald Dini, was independently corroborated. Rohier, Dr. Burns' sister and the NCE's secretary, also identified "Morehead" as Dini. Additionally, Rohier testified that a man who identified himself as Morehead wrote checks on his NCE account in her presence and that the same man gave her deposit slips for credit of funds to the Morehead NCE account. A handwriting expert identified the handwriting on these checks as Dini's and a fingerprint expert found Dini's prints on these deposit slips. This evidence suggests, independently of Dr. Burns' testimony, that the man who identified himself to Rohier and Dr. Burns as Morehead was actually Gerald Dini.
 
 
 14
 For these reasons, we find that there is not a reasonable probability that impeaching Dr. Burns' testimony would have resulted in Dini's acquittal. See United States v. Endicott, 869 F.2d 452, 456 (9th Cir.1989) (finding that there was not a reasonable likelihood that undisclosed impeachment evidence could have resulted in acquittal because: (1) there was substantial independent evidence of guilt, (2) the witness' testimony was corroborated by other evidence, and (3) the undisclosed evidence was somewhat cumulative). Therefore, we hold that the undisclosed files containing information on Dr. Burns are not material and that failure to produce these files did not violate due process under Brady.[2]
 
 B. Comment on a Witness
 
 15
 At the close of defense cross-examination of government witness Dr. Burns, the trial judge commented:
 
 
 16
 Thank you Doctor. And in case you thought you are on trial, I find you not guilty.
 
 
 17
 Dini argues that, in spite of a curative instruction given later, this comment undermined the defense's efforts to discredit the testimony of Dr. Burns. Dini argues further that because Dr. Burn's testimony was critical to his conviction, the trial judge committed reversible error in denying Dini's motion for mistrial.
 
 
 18
 We review for an abuse of discretion the issue whether judicial comments during a jury trial constitute reversible error. United States v. Green, 698 F.2d 1364, 1375 (9th Cir.1983).
 
 
 19
 Judicial misconduct requires reversal only if "the conduct measured by the facts of the case presented together with the result of the trial was clearly prejudicial to the rights of the party." United States v. Bennett, 702 F.2d 833, 836 (9th Cir.1983). Because the potential error is evaluated in the entire context of a case, we have also found that the decision to reverse must be made in light of the evidence of a defendant's guilt. United States v. Poland, 659 F.2d 884, 894 (9th Cir.1981), cert. denied, 454 U.S. 1059, 102 S.Ct. 611, 70 L.Ed.2d 598 (1981); accord United States v. Bennett, 702 F.2d 833, 836 (9th Cir.1983); United States v. Schaflander, 719 F.2d 1024, 1026 (9th Cir.1983), cert. denied, 467 U.S. 1216, 104 S.Ct. 2660, 81 L.Ed.2d 366 (1984). Moreover, curative instructions by the trial judge often significantly reduce any prejudicial effect initially caused by the misconduct. See United States v. Sanchez-Lopez, 879 F.2d 541, 553 (9th Cir.1989); United States v. Calhoun, 542 F.2d 1094, 1105 (9th Cir.1976), cert. denied, 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977); United States v. Marshall, 526 F.2d 1349, 1362 (9th Cir.1975), cert. denied, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976). In light of these considerations, "[a] judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality." United States v. Laurins, 857 F.2d 529, 537 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3215, 106 L.Ed.2d 565 (1989).
 
 
 20
 Here, there is strong evidence of Dini's guilt independent of Dr. Burn's testimony (see discussion in section II (A)). In addition, the trial judge instructed the jury to disregard the comment because the judge had not meant to express an opinion about anything Dr. Burns had said. Thus, viewed in the entire context of the case, it is unlikely that the comment prejudiced the defendant. We find that the comment was not an abuse of the trial judge's discretion and, accordingly, was not reversible error.
 
 C. Denial of Introduction of Evidence
 
 21
 The trial judge denied the defense's motion to introduce into evidence a tape recording offered by the defense, and instead allowed into evidence an edited transcript of the recording, also offered by the defense. The recording contained a conversation between Ken Byrnes and FBI agent Edward Hall, who had conducted an investigation into the theft of the Aetna drafts. The defense argued to the district court that the tape was not hearsay because it was offered solely for the purpose of impeaching Hall's prior testimony. Dini contends that the tape would have impeached Hall in two ways: (1) Hall had previously testified that he had not threatened Byrnes, and on the tape Hall did not respond to Byrnes' statement that Byrnes did not feel comfortable having been threatened by a grand jury proceeding, and (2) Hall had previously testified that he had no recollection that the reason Byrnes missed an appointment with Hall was because Byrnes had been in an automobile accident, and on the tape Byrnes makes reference to his having been in some kind of accident before one of his meetings with Hall.
 
 
 22
 The district court expressed concern that there were statements by Byrnes in the recording which were self-serving, and that admission of the recording would improperly allow Byrnes to testify without cross-examination. The district court therefore refused to admit the tape itself, but instead admitted an edited transcript of the conversation in which the statement by Byrnes regarding a grand jury threat had been removed.
 
 
 23
 We review evidentiary rulings for an abuse of discretion. United States v. Meyers, 847 F.2d 1408, 1411 (9th Cir.1988).
 
 
 24
 Under Rule 403 of the Federal Rules of Evidence, the trial judge has discretion to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice.[3] In deciding whether to admit the whole tape, the trial judge needed to weigh the impeachment value of the non-hearsay statements contained on the tape against the prejudicial value of the tape as a whole. See United States v. Kenny, 645 F.2d 1323, 1340-42 (9th Cir.1981), cert. denied, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981); see also United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir.1985). Because the impeachment value of the statements was minimal, and because Byrnes' statement about grand jury threats was self-serving, we find that the district court did not abuse its discretion in denying admission of the entire tape recording.
 
 D. Special Assessment
 
 25
 At sentencing the district court ordered Dini to pay a special assessment of $350.00. Since that time, we have found such special assessments unconstitutional. United States v. Munoz-Flores, 863 F.2d 654 (9th Cir.1988), cert. granted, 58 U.S.L.W. 3212 (1989). In light of the Supreme Court's grant of certiorari in Munoz-Flores, we remand this issue to the district court for decision consistent with the Court's future Munoz-Flores ruling.
 
 
 26
 AFFIRMED in part and REMANDED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We note, however, that while Dini asks this court to conclude that the undisclosed files would have discredited the testimony of Dr. Burns, Dini has not provided us with the contents of these files. Nor has Dini indicated that he has attempted to obtain these files, through the Freedom of Information Act or otherwise. Under these circumstances, it would be pure speculation for us to conclude that the undisclosed evidence would have discredited Dr. Burns' testimony
 
 
 [2]
 Because we find that this evidence is not material, we do not reach the issue of whether this evidence was "in possession" of the prosecution for Brady purposes
 
 
 [3]
 Rule 403 states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 Fed.R.Evid. 403.