60 F.3d 835
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Richard AICHELE, Defendant-Appellee.
 No. 94-10346.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 12, 1995.
Decided June 30, 1995.
 
 1
 Before: GOODWIN, POOLE, and KLEINFELD, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 This case is before us a second a time. We affirmed Aichele's conviction on direct appeal in United States v. Aichele, 941 F.2d 761 (9th Cir. 1991). Aichele now appeals from the district court's order denying a new trial.
 
 
 4
 Aichele's motion for a new trial asserted that Harold Otis St. John, a government witness at Aichele's trial, perjured himself. Aichele argues that (1) the government failed to disclose St. John's perjury to the defense, and (2) violated Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) by withholding impeachment information from the defense.
 
 
 5
 After Aichele's conviction, defense counsel discovered a letter in St. John's California Department of Correction's file ("CDC file"). This letter had been prepared by the Assistant United States Attorney ("AUSA") who had represented the United States at Aichele's trial. In pertinent part, the letter read:
 
 
 6
 Because of his cooperation and the realistic prospects of retaliatory action on behalf of Richard Aichele and/or his associates, we ask that you take appropriate measures with regard to the housing of Mr. St. John.
 
 
 7
 A memorandum in St. John's CDC file dated March 13, 1990 reported that St. John had told a prison official that "the Department of Justice promised him that he would be housed in a protective housing unit when the trial ended." This memorandum also noted that St. John showed the prison official the letter that had been written on his behalf by the AUSA.
 
 
 8
 During Aichele's trial, St. John was asked "[i]s there anything that you are going to receive as a result of testifying here today?" St. John replied "[n]ot anything." On cross-examination, however, the defense counsel asked:
 
 
 9
 Q. And it's your hope, is it not that you will get some protection now that you have testified in a major case; isn't that true?
 
 
 10
 A. I would like to get some protection, yes.
 
 
 11
 * * *
 
 
 12
 Q. Now you are looking to get protective custody as you told Ms. Simpson and Mr. Krampitz; isn't that right?
 
 
 13
 A. Yes, it is.
 
 
 14
 Instead of advising the district court and counsel that she indeed had prepared, or planned to send, a letter suggesting protective housing for St. John -- thus avoiding this motion for a new trial and this appeal -- the AUSA waited until filing her response to Aichele's new trial motion to explain that she made no promise to arrange protective housing for St. John; that she told St. John only that, on his behalf, she would write a letter to the warden advising him of the circumstances of St. John's testimony; and that her trial notes indicated that on December 1, 1989 she told Donon Weinberg, a member of Aichele's trial defense team, that she would be sending a letter to the warden. Weinberg submitted an affidavit in which he denied any recollection of the AUSA telling him that she intended to write a letter to the warden. St. John has died and no longer is able to submit sworn affidavits.
 
 
 15
 The district judge who presided over Aichele's trial disposed of the motion without a hearing. The judge's decision to resolve the motion on the affidavits of the parties and the court record is a matter within his discretion, United States v. Reyes-Alvarado, 963 F.2d 1184, 1188-89 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992), which was not abused here. Although the AUSA should have been more forthcoming during the trial, the judge was satisfied "that a failure [during the trial] to obtain further corroboration of Mr. St. John's unreliability was harmless beyond a reasonable doubt."
 
 
 16
 1. St. John conceded under cross-examination that he was "looking" to obtain protective custody as a result of his testimony. He did not concede that the prosecution had written a letter on his behalf. Aichele's theory of perjury appears to be this: St. John denied before the jury that he "was going to receive" anything for his testimony, not disclosing that the AUSA had promised that she would place him in protective custody. Because the AUSA had made no such promise, "perjury" is not actually found in the record. Assuming, arguendo, that when viewed from St. John's own subjective perspective, his testimony was deceptive, it was not literally false. There was equivocation and word games, but no perjury. The district court judge made a finding that the AUSA's affidavit accurately described her transactions with St. John. That finding was not clearly erroneous.
 
 
 17
 As a common practice, prosecutors inform prison officials when an inmate in their custody has given testimony for the government in obtaining a conviction of another. This information is intended to enhance the inmate's safety. It is common knowledge among the bar, however, that prosecutors do not control inmate housing decisions. St. John mistakenly may have understood that the AUSA promised him protective custody, when in fact all she could promise him was a letter requesting it. The prosecutor should have approached the bench when St. John denied he was receiving anthing for his testimony, and disclosed that he was receiving a letter from her to the warden requesting "appropriate measures" regarding St. John's housing because of his cooperation and the risk of retaliation. But there is no reasonable probability that this disclosure would have changed the outcome, so reversal cannot be predicated on the nondisclosure. United States v. Zun-Arce, 44 F.3d 1420, 1428 (9th Cir. 1995).
 
 
 18
 2. Aichele makes other assertions in his briefs and argument, but the record shows no Brady violation or other misconduct by the prosecutor. The government must disclose to the defense evidence in its possession that is "material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1983). The conviction must be reversed "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The district judge did not abuse his discretion in holding that a new trial was unwarranted under any of Aichele's theories. See United States v. Shaffer, 789 F.2d 682, 689 (9th Cir. 1986).
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3