**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-10450 |
| Plaintiff - Appellee, | D.C. No. 3:06-cr-00803-SI |
| v. | |
| TAMMY A. THOMAS, | MEMORANDUM [*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted December 7, 2009
San Francisco, California

Before: TASHIMA, GRABER, and BYBEE, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Defendant-appellant Tammy Thomas appeals her convictions, after a jury trial, of three counts of perjury under 18 U.S.C. § 1623(a) and one count of obstruction of justice under 18 U.S.C. § 1503.[1]  We affirm.

Thomas argues that her entire trial was tainted by the introduction of evidence of Thomas's alleged ingestion of testosterone and of alleged physical effects, including hirsutism, resulting from this ingestion.  However, evidence of the physical effects of Thomas's alleged testosterone ingestion was highly material to the issue of whether Thomas knowingly used steroids, and thus knowingly lied to the grand jury when she testified to the contrary.  Moreover, the physical effects evidence, which did not include photographs, was carefully and expressly limited by the district court, and was not unduly prejudicial under Federal Rule of Evidence 403.

Thomas claims that her Sixth Amendment rights to a fair trial and to call witnesses in her defense were violated when the district court denied her attempt to recall as a witness Jeffrey Novitzky, the lead case agent in the government's case-in-chief.  The record reveals that Thomas's attorney cross-examined Novitzky for several hours and was never cut off by the court in his cross-examination.  Thomas

---

[1]  The facts underlying Thomas's appeal are well known to the parties and are detailed in *United States v. Thomas*, __ F.3d ___ (9th Cir. 2010).  We do not repeat them here.

-2-

sought to recall Novitzky later in the trial to cross-examine him on wholly collateral issues, but the district court did not abuse its discretion in declining to allow defendant a second bite at the cross-examination apple to delve into largely irrelevant collateral issues that would have served only to confuse the jury. *See* FED. RULE EVID. 403; *United States v. Geston*, 299 F.3d 1130, 1137 (9th Cir. 2002).

Thomas argues that the district court erroneously allowed the prosecutor who questioned Thomas before the grand jury to enter the case and defend his conduct while acting as the government's advocate at trial, in violation of the advocate-witness rule and the rules against government vouching. Thomas also argues that the government improperly vouched for its case and committed other misconduct during its rebuttal argument. These arguments do not warrant a new trial. The advocate-witness rule prohibits an attorney from appearing as both a witness and an advocate in the same litigation. *United States v. Pantril*, 764 F.2d 548, 552-53 (9th Cir. 1985). Moreover, in certain cases, a prosecutor's credibility may be so intertwined with a case that he or she cannot fairly serve as trial counsel even if he or she does not testify. *United States v. Edwards*, 154 F.3d 915, 921-23 (9th Cir. 1998). Even assuming that the trial jury was told, or could infer, that one of the prosecutors at Thomas's trial was also the prosecutor who questioned

Thomas before the grand jury, any error would have been harmless because the prosecutor's credibility was not an issue at trial. Moreover, because the subjective understanding and goals of the grand jury questioner had no bearing on whether Thomas perjured herself or obstructed justice during her grand jury testimony, Thomas could not have properly called the grand jury prosecutor as a witness at trial, whether or not he was serving on the government's trial team.

There was no *Brady* violation requiring a new trial. To establish a *Brady* violation, a defendant must demonstrate: (1) that the evidence in question was exculpatory or impeachment evidence favorable to defendant; (2) that the prosecution willfully or inadvertently suppressed the evidence; and (3) that the non-disclosure prejudiced the defendant. *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006). Thomas's due process argument based on *Brady* fails both the second and third prongs of the *Raley* test.

First, Thomas has not shown that the government "suppressed" the alleged *Brady* evidence—twenty-two exhibits to a report of the Treasury Inspector General for Tax Administration ("TIGTA")—at all. The government provided the defense with a summary of the exhibits on which the TIGTA Report was based, and this summary specifically referenced the exhibits by number and named all witnesses who had been interviewed in connection with the TIGTA Report. Thomas,

however, never requested the referenced exhibits or sought to interview any of the witnesses identified in the report. Where a "defendant has enough information to be able to ascertain the supposed *Brady* material on his own, there is no suppression." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991); *see also United States v. Shaffer*, 789 F.2d 682, 690 (9th Cir. 1986) (defendant cannot claim a *Brady* violation where she was "aware of the essential facts enabling [her] to take advantage of any exculpatory evidence" (internal quotation marks omitted)).

Thomas's *Brady* claim also fails on prejudice grounds, as the disclosure of the TIGTA exhibits to the defense would not have created a "reasonable probability that . . . the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985) (internal quotation marks omitted). The putative *Brady* evidence related only to Barry Bonds, and there was no evidence—tenuous or otherwise—in the TIGTA exhibits tending to show any bias on the part of Special Agent Novitzky towards Thomas. More importantly, the most damning testimony against Thomas did not come from Novitzky. The testimony of Arnold, Dalton, and the USADA testers created an extremely strong case against Thomas, all without one word of Novitzky's testimony. Finally, because "[t]he test for prejudice for a *Mooney-Napue* claim is the same as that for materiality in a *Brady* claim," *Morris v. Ylst*, 447 F.3d 735, 745 (9th Cir. 2006),

Thomas's argument that she is entitled to a new trial based on alleged perjury by Novitzky in light of the TIGTA exhibits fails on lack of prejudice grounds.

Lastly, Thomas argues that the cumulative effect of the district court's alleged errors requires a new trial. Most of the alleged errors at Thomas's trial were not, in fact, errors at all. Moreover, even taking into account decisions on which the district court arguably erred, there is no reasonable likelihood that the jury would have acquitted Thomas. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

**AFFIRMED.**